IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Blake Brand, and Matt Hosking, Individually And On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>APPLE, INC.;<br><br>    Defendant. | C/A No.: 2:17-cv-3453-RMG<br><br><br>CLASS ACTION COMPLAINT |

## INTRODUCTION

1. Plaintiffs Blake Brand and Matt Hoskings bring this action, individually and on behalf of a class of similarly situated owners of Apple's iPhone 6, 6S and SE and iPhone 7 (together, the "iPhones"), and prior models which similar prior undisclosed/concealed conduct by Apple similarly degraded performance as set forth below. This action arises from Apple's deliberate limitation of the performance of the older iPhone models to coincide with the release of newer models in an attempt to get users to purchase newer devices.

## PARTIES, JURISDICTION & VENUE

2. Plaintiff Blake Brand is a citizen and resident of the State of South Carolina. On or about mid 2016, Ms. Brand purchased a new iPhone 6. Around November and/or December 2017, Ms. Brand updated the iOS software, and shortly thereafter she noticed her phone began experiencing slower processing, longer wait times for applications, slower scrolling and other degraded performance.

3. Plaintiff Matt Hoskings is a citizen and resident of the State of South Carolina. On or about early 2016, Mr. Hoskings purchased a new iPhone 6. Around November and/or

1

December 2017, Mr. Hoskings updated the iOS software, and shortly thereafter she noticed her phone began experiencing slower processing, longer wait times for applications, slower scrolling and other degraded performance.

4. Defendant Apple, Inc. is a corporation formed under the laws of California with its principal place of business located in Cupertino, California.

5. Apple sold and distributed iPhones and iOS software nationwide through its stores and through third-party vendors, such as Verizon, AT&T, etc.

6. This Court has subject-matter jurisdiction over this action pursuant to: (a) Title 28, United States Code, Section 1331; and (b) The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. Sections 1332(a) and (d), because the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and more than two thirds of the members of the Class are citizens of states different from those of Defendants.

7. Under CAFA, the federal courts have exclusive jurisdiction over all actions with an amount in controversy in excess of $5,000,000. Here, the statutory claims alone have a value far in excess of that amount, which establishes jurisdiction.

8. This Court has person jurisdiction over Apple because it conducts business in South Carolina, has one or more retail stores in South Carolina, and updates software to Apple phones across South Carolina.

9. Venue is proper in South Carolina because that is where a substantial part of the events or omissions giving rise to the claims occurred: the Plaintiffs resided when the harm occurred, began occurring, and continues occurring.

## **GENERAL ALLEGATIONS**

10. In December 2017, independent researchers identified computer code in the October 2017, Apple software update that intentionally slowed down the operation of the phone.

11. Apple has admitted to deliberately adding the above-mentioned code as a "feature" that limits the performance of older devices that would cause them to turn off suddenly. Apple claims the new software updates for the older phones are designed to "smooth out" peak power demands and prevent surprise shutdowns.

12. Apple's admission applies to prior software updates, not only the 2017 update(s).

13. These software updates that slow down the older phones coincide with the release of newer iPhone models, causing users to believe their phone is failing and that they need to purchase a new device.

14. In reality, the problem could be resolved by replacing just the battery, a far less expensive option than upgrading to the next phone model, a fact which is unknown to many iPhone users.

15. As a result of Apple's unfair, deceptive and/or fraudulent business practices, owners of the iPhones – including Plaintiffs – have needlessly replaced their older phones for newer, more pricey models.

16. New Apple iPhone models have at all times relevant to this action sold for more than $100.00 per phone.

17. Now, it seems, Apple wishes to dictate to its consumers: Upgrade again or face the difficulties involved in changed to a different platform (i.e. android, etc.).

18. Defendant Apple designs, manufactures, markets and sells the iPhone series of smartphones. At issue in this Complaint are following models: iPhone 6, 6S and SE and the iPhone 7.

19. Unbeknownst to consumers, the iOS updates on the iPhone models in question reorders incoming commands to make sure that not all of them are done in parallel.

20. As a result, there is an inherent slowdown of the average response times by the system.

21. Apple has stated that the "feature" is designed to prolong the life of the batteries. The older iPhone batteries struggle to supply the required maximum current needed to power the phone processor at full speed, causing it to shut down unexpectedly. By slowing the performance, the phone does not meet maximum current and will no longer shut off without warning.

22. Upon information belief, if Apple's real concern was truly battery life, that can be fixed with a $79 replacement battery from Apple, a fact unknown to many users.

23. The timing of the iOS updates tends to coincide with the release of a newer model, prompting the user to upgrade their entire phone rather than the simple, cheaper option of replacing the battery.

24. This bad-faith business practice has tricked hundreds of thousands, if not millions, of consumers in the past, and did indeed trick the Plaintiffs in the past.

## CLASS REPRESENTATION ALLEGATIONS

25. The named Plaintiffs bring this action on behalf of themselves and all others who are similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

26. There are two proposed classes: The first is defined as all South Carolina resident individuals or businesses who have owned iPhones subjected to Apple's propagation of an intentionally degrading iOS – this includes the current iOS software and also previous iOS

software versions that have functionally sabotaged the performance of iPhone models older than whatever model was current at the time of that iOS software release.

27. The second class is defined as all United States of America resident individuals or businesses who have owned iPhones subjected to Apple's propagation of an intentionally degrading iOS – this includes the current iOS software and also previous iOS software versions that have functionally sabotaged the performance of iPhone models older than whatever model was current at the time of that iOS software release.

28. Pursuant to Rule 23, F.C.R.C.P., Defendant Apple has acted and refused to act on grounds generally applicable to all the members of the class, thereby making appropriate final injunctive relief, declaratory relief, and damages relief concerning the class as a whole.

29. The class is so numerous that joinder of all members is impracticable.  Although a more precise number of class members will be better established as part of class notification, upon information and belief, the number of potential members consists of hundreds of thousands of individuals.  Class members may be notified of the pendency of this action by email, regular mail and also by published notice if the Court determines that published notice is a necessary supplement.

30. There are questions of law and fact that are common to the class which predominate over any questions effecting individual members.  These common legal and factual questions include:

   a. Determination of the facts concerning Apple's intent to deceive consumers;

   b. Determination of the facts concerning Apple's intent to defraud consumers;

   c. Determination of the facts concerning Defendants' failure to adopt and/or enforce policies and procedures to screen its charges for these preventable cancers;

   d. Determination of Defendant's liability;

e. Determination of Defendant's willfulness, recklessness, intentionality, carelessness;

f. Determination of whether, and the extent to which, relief should be entered.

31. The claims asserted by Plaintiffs are typical of the claims of the members of the class in that they involve the same facts of new software degrading an existing iPhone, arise from the same practices or course of conduct that gives rise to the claims of all other class members, and are based on the same legal theories.

32. Plaintiffs is an adequate representative of the class because his interests are consistent with the interests of the class and do not conflict with the interests of the class they seek to represent; Plaintiffs adequately and truly represents the interests of the absent class members; Plaintiffs have common claims with each class member based on the same essential facts; they have retained counsel competent and experienced in class action and complex class action litigation, and he intends to prosecute this action vigorously. The interests of the class will be fairly and adequately protected by Plaintiffs and their counsel.

33. The class, as defined, involves only class members for whom the amount in controversy exceeds one hundred dollars ($100.00).

34. This class action in maintainable under Rule 23, F.C.R.C.P. Common questions of fact and law relating to liability predominate over any questions affecting only individual class members. Defendant's common course of alleged conduct includes Apple and its agents, servants, or employees intentional design of software meant to slow-down, or otherwise degrade the performance of prior model iPhones, Defendant's failure to inform consumers of this effect in calculated expectation that it would prompt a sooner-than-otherwise upgrade by consumers.

35. Moreover, class action treatment is a superior method for the fair and efficient adjudication of the controversy. The members of the class have little or no interest in

individually controlling prosecution of separate claims. It is highly desirable from the standpoint of manageability and resources to concentrate the litigation pertaining to the class claims in a single forum. To the extent class members have to try individual damages cases, this can be done in small group trial settings, far more efficiently and economically if class-wide issues, such as liability, are first resolved on a large group basis, i.e., through class trial. Whatever difficulties may exist in the management of the class action will be greatly outweighed by the class procedure, including, but not limited to:

   a. Other available means of adjudicating the claims of Plaintiff and members of the class, such as dozens of individual actions brought separately and pursued independently in state or federal courts, are impracticable and inefficient;

   b. This action will cause an orderly and expeditious administration of the class claims, economics of time, effort and expense will be fostered and uniformity of decisions ensured;

   c. Without a class action, members will continue to suffer damages and Defendant's tortuous and wrongful conduct will proceed without remedy while Apple continues to retain and reap the proceeds and profits of its wrongful, fraudulent conduct;

   d. Management of this action poses no unusual difficulties that would impede its management by the Court as a class action; and

   e. The claims brought by Plaintiff and members of the class are not now, nor have they been, the subject of another class action to the best of Plaintiff's knowledge.

   36. The Defendant has acted and refused to act on grounds generally applicable to the class, and are the direct and proximate causes of the Plaintiffs' damages described in this complaint.

## FOR A FIRST CAUSE OF ACTION: FRAUD

   37. The foregoing and following paragraphs are hereby incorporated as if fully stated.

38. Apple leads iPhone users to believe that new releases of iOS will improve the phones' uses and efficiencies. Apple does this in a variety of ways, perhaps most commonly touting features of the new iOS that it believes consumers want, all to induce consumers to "upgrade" to the current version of an iOS.

39. Apple's assertions that new versions of iOS are superior for not-new phones was premeditatedly false.

40. Apple iPhone customers and users of not-new iPhones relied on Apple's technical expertise and statements, and believed that the new versions of iOS would improve their user experiences.

41. Apple's misrepresentations were material, in that reasonable people may rely on a technology company's statement of "upgraded" software and Apple did intend for Plaintiffs and other consumers to act upon these representations. Specifically, Apple intended for Plaintiffs and consumers to install the new iOS software, become dissatisfied with the then-undermined performance of their iPhones (be too complacent to change platforms to Android) and then buy new near $1,000 iPhones.

42. Plaintiffs did rely on this falsity, and as a direct and proximate result, incurred damaged or diminished iPhone performance, the expense and hassle of upgrading to a new version of the iPhone

43. For this malfeasance, Plaintiffs seek actual, consequential, treble and exemplary damages.

**FOR A SECOND CAUSE OF ACTION: UNFAIR, DECEPTIVE ACTS AND PRACTICES**

44. The foregoing and following paragraphs are hereby incorporated as if fully stated.

45. Apple's above-described practices intentionally deceived consumers, unfairly costing each consumer hundreds of dollars.

46. Apple's practice described herein is unethical, and not commercially sound.

47. For this malfeasance, Plaintiffs seek actual, consequential, treble and exemplary damages.

### FOR A THIRD CAUSE OF ACTION: NEGLIGENCE

48. The foregoing and following paragraphs are hereby incorporated as if fully stated.

49. Apple had a duty to inform its existing iPhone users that if a software modification / "upgrade" would degrade the performance of the iPhone.  Apple also had a duty not to intentionally sabotage its customers' use of its products after they were purchased.

50. Apple breached these duties by intentionally and covertly propagating software to diminish the performance of its users iPhones.

51. These breaches directly and proximately caused Plaintiffs' harms and damages.

52. For this malfeasance, Plaintiffs seek actual, consequential, treble and exemplary damages.

### PRAYER FOR RELIEF

**WHEREFORE**, having fully set forth the grounds of his complaint, Plaintiff asks this Court for judgment against the Defendants, both jointly and severally for INJUNCTIVE, ACTUAL, CONSEQUENTIAL and PUNITIVE DAMAGES, together with costs of this action, and for such other and further relief as this Court may deem fit, just and proper.

MAYER LAW PRACTICE, LLC

\_\_/s/  Aaron Mayer_____

                                        Aaron Mayer, Esq.
                                        MAYER LAW PRACTICE
                                        2000 Sam Rittenberg Blvd. Ste. 2011
                                        Charleston, SC 29407
                                        T: (843) 225-7240
                                        F: (888) 446-3963
                                        aaron@mayerlawpractice.com

December 21, 2017
Charleston, SC                            ATTORNEY FOR PLAINTIFFS